UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 MAR 11 PM 12: 22

CLERK

BY_____
DEPUTY CLERK

CHRISTOPHER THURSTON,                    )
                                         )
        Plaintiff,                       )
                                         )
                                         )
        v.                               )        Case No.  5:13-cv-316
                                         )
ANDREW PALLITO, SCOTT MORLEY,            )
BOB ARKLEY, CARL DAVIS,                  )
BRIAN REED, and CHRIS MANDIGO,           )
                                         )
        Defendants.                      )

**OPINION AND ORDER ADOPTING IN PART MAGISTRATE'S**
**REPORT AND RECOMMENDATION**
(Doc. 30 & 36)

This matter came before the court for a review of the Magistrate Judge's January

13, 2015 Report and Recommendation ("R & R"), in which he recommended that the

court grant the Fed. R. Civ. P. 12(b)(6) motion to dismiss filed by Defendants Andrew

Pallito, Scott Morley, Bob Arkley, Carl Davis, Brian Reed, and Chris Mandigo (Doc. 30).

In their motion, Defendants seek dismissal of Plaintiff Christopher Thurston's claims

brought under 42 U.S.C. § 1983, alleging that Vermont Department of Corrections

("DOC") staff wrongfully confiscated Plaintiff's journal as contraband and used it to

discipline him for the thoughts and beliefs contained therein.  Defendants contend

Plaintiff has failed to state a claim upon which relief may be granted.  Plaintiff opposes

dismissal.

Plaintiff filed a timely objection to the R & R (Doc. 39) to which Defendants have

filed a response (Doc. 40).  Plaintiff's objection reiterates and supplements the factual

and legal basis of his claims, alleges that his Fifth Amendment privilege against self-

incrimination was violated when his journal was confiscated and used against him, clarifies the sources of his physical injury and mental anguish, argues that DOC failed to follow its own protocols and procedures, and states the basis on which he claims Defendant Pallito was personally involved in the alleged constitutional violations.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## I.     The Complaint and the Amended Complaint.

In his thirty-eight page R & R, the Magistrate Judge carefully reviewed the factual allegations and legal claims in both the Complaint and Amended Complaint. At this juncture, a brief summary of the relevant allegations is sufficient.

Plaintiff alleges that during his incarceration in a Vermont state correctional facility, DOC's mental health services provided Plaintiff with a composition book in which to record his thoughts. On January 18, 2013, during a search of Plaintiff's cell, Defendant Arkley allegedly confiscated Plaintiff's journal and thereafter Defendant Arkley and Defendant Morley questioned Plaintiff about it. When Plaintiff allegedly failed to provide satisfactory answers, he was placed in a segregation unit. Either as part of the journal or as a separate document, Plaintiff further alleges that DOC confiscated the addresses of several of Plaintiff's friends, thereby depriving him of contact with them.

As for the contents of his journal, Plaintiff alleges that the journal explores the challenges of incarceration, events and circumstances in Plaintiff's personal life and his reactions to them, Plaintiff's thoughts about introducing contraband into the facility to

2

make money to pay for a lawyer, and a jail break story in the first person which is based in the St. Johnsbury correctional facility where Plaintiff was housed that Plaintiff hoped to develop into a longer work of fiction.

Plaintiff alleges that, in addition to the allegedly wrongful confiscation of his journal, in a hearing that followed thereafter, Defendant Arkley fabricated evidence in his report and Defendant Mandigo failed to act as an impartial hearing officer and failed to consider the contents of Plaintiff's journal to "corroborate" Defendant Arkley's report. Plaintiff alleges that Defendant Davis mishandled his appeal by failing to note that it had been filed. Plaintiff alleges that he was then transferred to a new correctional facility which caused him to miss medical appointments and experience pain from a torn rotator cuff and bicep tendon and that at the new facility he was in even more intensive segregation and was not permitted to self-inject his required insulin. When Plaintiff refused to allow a "stranger" to provide his insulin, he allegedly suffered adverse health consequences which required hospitalization.

As a result of the confiscated journal, Plaintiff alleges that he was placed in segregation on three separate occasions resulting in 268 days of segregation as of May 13, 2014. Plaintiff requests the court to order the return of his journal and seeks compensatory and punitive damages.

## II.    Conclusions of Law and Analysis.

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a court assumes "all well-pleaded, nonconclusory factual allegations in the complaint to be true[,]" *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), and determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court also draws "all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal citation and quotation marks omitted). The court will not credit "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. As a result, "[w]hile legal

3

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

The court is required to "liberally construe" Plaintiff's Complaint and Amended Complaint and interpret these pleadings "to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (citation and internal quotation marks omitted). "Nonetheless, a *pro se* complaint must state a plausible claim of relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

The R & R correctly concludes that to the extent the Complaint and Amended Complaint may be construed to assert damages claims against Defendants in their official capacities, Plaintiff's claims must be dismissed because such claims are not against a "person" as required by 42 U.S.C. § 1983. In his objection, Plaintiff clarifies that he is making official capacity claims for monetary damages. *See* Doc. 39 at 3 ("The Plaintiff asserts his numerous rights, in which the Defendants violated, both under the color of law and outside the scope of their authority, as officials and individually, and hence the claim for monetary damages.") He does not, however, object to the R & R's conclusion that those claims are not available against Defendants in their official capacities under § 1983. *See Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) ("Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983"). Plaintiff's official capacity claims for monetary damages are hereby DISMISSED.

The R & R further concludes that under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) (the "PLRA"), Plaintiff's mental anguish claims need not be dismissed even though "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). In his objection, Plaintiff identifies his "physical injury" as the injuries he suffered when he was not allowed to self-inject insulin. *See* Doc. 39 at 3 (identifying Plaintiff's physical injury

4

as one caused by "denial of self-injection of life-saving insulin").[1]  In light of this

clarification, the court disagrees with the R & R's conclusion that Plaintiff's mental

anguish claims remain viable under the PLRA. Regardless of how liberally the court

construes Plaintiff's Complaint and Amended Complaint, it is not plausible that

Plaintiff's suffered a physical injury or was hospitalized because Defendants, or any one

of them, inflicted a physical injury on Plaintiff.  Defendants are thus correct that Plaintiff

does not plausibly allege causation as any physical injury Plaintiff suffered was solely

and directly attributable to Plaintiff's decision to refuse any insulin that he could not self-

administer.  Plaintiff's mental anguish claims must therefore be dismissed under the

PLRA.  The court therefore does not adopt that portion of the R & R addressing the

application of the PLRA.

The Magistrate Judge concluded that although Plaintiff alleges the personal

involvement of the named Defendants, other than Defendant Pallito,[2] none of Plaintiff's

claims set forth a plausible claim of relief.  The court finds the Magistrate Judge's

analysis thorough and well-reasoned and adopts it as the opinion of the court.  Nothing in

---

[1] Plaintiff does not allege a physical injury as a result of the conditions of his confinement in
segregation, nor could he plausibly do so as it is apparent that none of the Defendants inflicted a
physical injury on Plaintiff at any time.  This is also true of any medical appointments Plaintiff
missed as a result of his transfer to a new correctional facility.  Any pain Plaintiff suffered as a
result of his pre-existing medical conditions was not *caused* by Defendants as there is no
allegation that the medical appointments would have alleviated that pain. *See Bass v. Jackson*,
790 F.2d 260, 263 (2d Cir. 1986) (holding complaint did not adequately connect a failure to
receive medical care to any of correction official, requiring dismissal of that claim.).

[2] In his objection, Plaintiff alleges the "personal involvement of Commissioner Pallito" on the
grounds that he is "responsible for the actions of the staff under his direction and no official act
or implementation of any Directive, Policy or Procedure may commence without his signature
and/or approval." (Doc. 39 at 3.)  This allegation is insufficient to state a claim of personal
involvement. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("[W]e agree
with the district court that Grullon's complaint, as filed, did not sufficiently allege the Warden's
personal involvement in or awareness of the health, safety, and communications issues raised by
Grullon.  There were no direct allegations; there were no indirect allegations sufficient to permit
an inference the Warden had acted or failed to act in any of the ways that would subject him to
personal liability for the deprivations alleged by Grullon.").

Plaintiff's objection alters that conclusion or offers any grounds for concluding that he has alleged a plausible claim for relief under § 1983. The court therefore DISMISSES WITHOUT PREJUDICE Plaintiff's federal claims as set forth in the Complaint and Amended Complaint.

## III.   Supplemental Jurisdiction Over Plaintiff's State Law Claims.

In his R & R, the Magistrate Judge recommended that the court refrain from exercising supplemental jurisdiction over Plaintiff's state law claims. The court agrees with this recommendation and adopts it. As the Supreme Court explained in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), where "all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Id.* at 350 n.7; *see id.* at 350 ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966)).

## IV.   Leave to Amend.

In his objection, Plaintiff raises what appears to be a new claim that his Fifth Amendment privilege against self-incrimination was violated when his private thoughts in his confiscated journal were used against him. This allegation is somewhat at odds with Plaintiff's further claim that, in presiding over Plaintiff's administrative hearing, Defendant Mandigo improperly failed to consider the contents of Plaintiff's journal in order to corroborate Defendant Arkley's report.

The parties have not briefed Plaintiff's Fifth Amendment claim and the district courts in the Second Circuit have concluded that the court has discretion to refuse to consider a legal argument raised for the first time in an objection to an R & R. *See Amadasu v. Ngati*, 2012 WL 3930386, at *5 (E.D.N.Y. Sept. 9, 2012) (collecting cases

6

and citing six factor test set forth in *Wells Fargo Bank N.A. v. Sinnott*, 2010 WL 297830 (D. Vt. Jan. 19, 2010) as guidance for determine how discretion should be exercised). In light of the Plaintiff's self-represented status, the court construes Plaintiff's objection as a request to raise a new constitutional claim under the Fifth Amendment. The court will grant Plaintiff leave to amend for this purpose. Plaintiff must file a Second Amended Complaint, which will take the place of any previously filed complaint, within thirty (30) days of this Opinion and Order. The Second Amended Complaint should only address Plaintiff's Fifth Amendment claim and should clearly identify the defendant or defendants against whom it is asserted, their personal involvement in the alleged constitutional violation, and the nature of the relief Plaintiff seeks in light of the PLRA. The court does not, at this time, extend leave to amend so that Plaintiff may supplement claims that the court has dismissed. In order to reassert dismissed claims, Plaintiff must explain why such supplementation should be allowed in the facts and circumstances of this case and under Rule 15 of the Federal Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, the court hereby ADOPTS IN PART the Magistrate Judge's R & R as the court's Order and Opinion, and GRANTS the Defendant's Motion to Dismiss (Doc. 30). All of Plaintiff's § 1983 claims against all Defendants are DISMISSED and any state-law claims the Plaintiff is alleging against Defendants are also DISMISSED. Plaintiff is hereby granted leave to file a Second Amended Complaint setting forth his claim under the Fifth Amendment, consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 11th day of March, 2015.

Christina Reiss, Chief Judge
United States District Court

7