UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher Thurston,

    Plaintiff,

    v.                                                                                        Civil Action No. 5:13-cv-316

Scott Morley, Bob Arkley,
and Carl Davis,

    Defendants.

## REPORT AND RECOMMENDATION
(Docs. 44, 47)

Plaintiff Christopher Thurston, a Vermont inmate proceeding *pro se*, brings this action under 42 U.S.C. § 1983 alleging that his Fifth Amendment right against self-incrimination was violated when, after confiscating his mental health journal, Vermont Department of Corrections (DOC) officials used information in the journal to put him in administrative segregation, and sent copies of his journal entries to the Vermont State Police. (Doc. 44.)[1] For relief, Thurston seeks the return of his journal, any copies the Vermont State Police might have, and for each officer involved to be reprimanded. (*Id.*)

Defendants have filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Thurston's § 1983 claims against them in their official capacities for any money

---

[1] Previously in this case the court dismissed claims Thurston had raised based on the First, Eighth, and Fourteenth Amendments, but granted Thurston leave to amend to raise a Fifth Amendment claim. (*See* Doc. 41 at 7.) Thurston filed his Second Amended Complaint asserting Fifth Amendment violations on May 18, 2015. (Doc. 44.)

damages are barred by Vermont's sovereign immunity, and that Thurston has failed to allege a violation of his Fifth Amendment rights.  (Doc. 47 at 3–7.)  Thurston has not filed any opposition.  For the reasons that follow, I recommend that Defendants' Motion to Dismiss (Doc. 47) be GRANTED and that Thurston's Second Amended Complaint (Doc. 44) be DISMISSED.

## Background

Thurston alleges as follows.[2]  While Thurston was incarcerated, mental health services gave him a composition book and asked him to write his thoughts in it.  (Doc. 4 at 2.)  Later, Defendant Bob Arkley confiscated Thurston's mental health journal.  (Doc. 44.)[3]  Information from the journal was then used to put Thurston in administrative segregation.  (*Id.*)

Defendants Scott Morley and Carl Davis then sent copies of Thurston's journal entries to the Vermont State Police.  (*Id.*)  Although Thurston has not been charged with anything as a result, he says he "did spend an uncomfortable half an hour being questioned by two detectives" who had copies of several of Thurston's journal entries.  (*Id.*)  Arkley, Morley, and Davis were at all relevant times DOC officials.  (*See* Doc. 4 at 2; Doc. 18 at 3.)

---

[2] Similar to the circumstances facing the court regarding evaluation of Thurston's Amended Complaint (*see* Doc. 36 at 3), it is difficult to understand the allegations in his one-page Second Amended Complaint without referring to his earlier pleadings.  In light of Thurston's *pro se* status I draw on Thurston's prior pleadings to supply relevant details.

[3] The date of the confiscation as alleged in the Second Amended Complaint (July 18, 2012) is inconsistent with Thurston's prior pleadings indicating that it occurred on July 18, 2013 (*see* Doc. 4 at 2; Doc. 18 at 2) and that Thurston was not incarcerated until September 2012 (*see* Doc. 4 at 2).  Ultimately, the year of the confiscation is not material to any issue currently before the court.

## Analysis

**I.     Rule 12(b)(6) Standard**

"To survive a 12(b)(6) motion to dismiss, a 'complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Fed. R. Civ. P. 8(a)(2). "[T]his standard creates a two-pronged approach based on two working principles." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (citations and internal quotation marks omitted). "First, although a complaint need not include detailed factual allegations, it must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Second, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'" *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (citation omitted) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Even though Thurston has not filed an opposition to the Motion to Dismiss, the court must still determine the sufficiency of the Second Amended Complaint as a matter of law. *See Goldberg v. Danaher*, 599 F.3d 181, 183–84 (2d Cir. 2010).

## II. Sovereign Immunity

Defendants assert that any claim for money damages that Thurston might be seeking against them in their official capacities should be dismissed as barred by Vermont's sovereign immunity. (Doc. 47 at 3–5.) Although Thurston's Second Amended Complaint does not appear to seek money damages, I conclude that Defendants—in their official capacities—are immune from any claim for money damages that Thurston might be asserting against them.

The Eleventh Amendment generally prohibits plaintiffs from recovering in federal court damages against state officials in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) ("[A] claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment."); *see also Tsirelman v. Daines*, No. 14-2154-CV, 2015 WL 4491766, at *2 (2d Cir. July 24, 2015) ("[R]etroactive claims seeking monetary damages from the state treasury are barred by the Eleventh Amendment because, even if state officials are the nominal defendants, the state is the real party in interest."). It is true that damages are available where a state has waived its Eleventh Amendment immunity or where Congress has abrogated that immunity acting under § 5 of the Fourteenth Amendment. *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). But neither waiver nor abrogation is present here: Vermont has expressly preserved its immunity under the Eleventh Amendment, 12 V.S.A. § 5601(g), and Congress did not intend to abrogate sovereign immunity by enacting § 1983, *Quern v. Jordan*, 440 U.S. 332, 340–41 (1979). I therefore recommend

4

that Thurston's Second Amended Complaint be dismissed insofar as it might seek money damages against Defendants in their official capacities.

### III. Failure to Allege a Violation of Federal Rights

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of [his] federal statutory rights, or [his] constitutional rights or privileges." *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Defendants maintain that Thurston's allegations fail to establish any Fifth Amendment violation, and that Thurston has therefore failed to state a § 1983 claim. (*See* Doc. 47 at 5.)

"The Fifth Amendment of the United States Constitution provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.'" *Jackson v. Conway*, 763 F.3d 115, 136 (2d Cir. 2014) (alteration and omission in original) (quoting U.S. Const. amend. V). The privilege against self-incrimination is incorporated by reference in the Fourteenth Amendment and is thus applicable to the states. *See Malloy v. Hogan*, 378 U.S. 1, 6 (1964). "The privilege 'permits a person to refuse to answer questions, in formal or informal proceedings, where the answers might be used to incriminate him in future criminal proceedings.'" *United States v. Okatan*, 728 F.3d 111, 116 (2d Cir. 2013) (quoting *United States v. Ramos*, 685 F.3d 120, 126 (2d Cir. 2012)). "[T]o qualify for Fifth Amendment protection, a communication must be (1) testimonial, (2) incriminating, and (3) compelled." *United States v. Greer*, 631 F.3d 608, 612 (2d Cir. 2011).

Defendants argue that the information in Thurston's confiscated mental health journal is not protected because the journal was not a compelled communication, but was voluntarily prepared. (*See* Doc. 47 at 6.) That argument is persuasive. The Supreme Court has stated that "[i]f the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged." *United States v. Doe*, 465 U.S. 605, 612 n.10 (1984). Although *Doe* involved business records, the Second Circuit has held that the Fifth Amendment also does not protect the contents of voluntarily prepared *private* documents. *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 90 (2d Cir. 1993) (Fifth Amendment did not protect defendant's personal calendar because it was voluntarily prepared); *accord United States v. Hogan*, 539 F.3d 916, 924 (8th Cir. 2008) (introduction at trial of papers seized from inmate's cell did not violate the Fifth Amendment). Here, even construing Thurston's pleadings liberally, there is no suggestion that his mental health journal was the product of government compulsion— only that mental health staff "asked" him to keep a journal. (Doc. 4 at 2.)[4]

For the above reasons, I conclude that Thurston has failed to allege any Fifth Amendment violation, either with respect to the use of information in his journal to place

---

[4] Defendants cite *Barrett v. Acevedo*, 169 F.3d 1155 (8th Cir. 1999) (en banc). In *Barrett*, the Eighth Circuit recited its prior holding that the Fifth Amendment might protect personal papers "in rare situations, where compelled disclosure would break the heart of our sense of privacy." *Id.* at 1168. *Barrett* did not present such a rare situation because the defendant had left a journal at a fast food restaurant, thereby eliminating any expectation of privacy. *Id.* Here, even if Fifth Amendment protection were available in the Second Circuit for personal papers for which there is an expectation of privacy, Thurston's journal would not qualify. As the court previously concluded, Thurston had no expectation of privacy with regard to what he wrote in his journal. (Doc. 36 at 19.)

6

him in administrative segregation, or with respect to the use of that information by the detectives who interviewed him. I accordingly conclude that Thurston has failed to state a § 1983 claim.

## IV.   Leave to Amend

The Second Circuit has cautioned that "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). Amendment is futile where there is a substantive problem with a cause of action that cannot be cured by better pleading. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

The court should deny leave to amend because any amendment would be futile. Here, better pleading will not cure the lack-of-compulsion problem with Thurston's Fifth Amendment claim. Thurston has consistently pleaded only that mental health services "asked" him to keep a journal. The court would disregard any amendment that

contradicted that.  *See Cobalt Multifamily Inv'rs I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 440 (S.D.N.Y. Mar. 7, 2012) (denying leave to replead where receiver could not allege facts necessary to state a claim without contradicting allegations of the original complaint); *see also Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070 (MKB), 2014 WL 1875037, at *2 (E.D.N.Y. May 9, 2014) (collecting cases).

## Conclusion

For the reasons set forth above, I recommend that Defendants' Motion to Dismiss (Doc. 47) be GRANTED and that Thurston's Second Amended Complaint (Doc. 44) be DISMISSED.

Dated at Burlington, in the District of Vermont, this 25th day of August, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).